## ARMOUR *vs.* LOSE.

[BILL IN EQUITY FOR REFORMATION OF DEED, AND SETTLEMENT OF PARTNERSHIP.]

1. *Equitable relief against mistake or fraud in obtaining conveyance.*—If a purchaser of an undivided half interest in a tract of land, by mistake or fraud, and without the knowledge or consent of his vendor, obtains a conveyance of the absolute property, a court of equity will direct a re-conveyance to the vendor of an undivided half interest.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. WADE KEYES.

THE bill in this case was filed by Jacob Lose, against Samuel Armour, and alleged, that the complainant, in December, 1846, owned a tract of land, near the city of Mobile, containing about thirty-five acres; that Samuel Armour, his father-in-law, proposed that their families should live togther on this land, and jointly cultivate a garden for market purposes, and that complainant should let him have an undivided half interest in the land; that complainant accepted this proposition, and agreed to sell said Armour an undivided half interest in the land for

$1,500, (that being one half the price paid by him for the land,) and authorized Armour to have a conveyance prepared accordingly; that Armour procured a deed to be prepared, which, through mistake or fraud, conveyed to him the entire interest in the land, and which the complainant executed under the supposition that it conveyed only an undivided half interest; that they jointly lived on the land and cultivated it until some time in 1849, when the complainant went to California, leaving Armour to carry on the business of the garden on their joint account; and that on his return from California, "within a year or two prior" to the filing of the bill, he learned for the first time that Armour claimed the entire interest in the land, and repudiated their partnership agreement. The prayer of the bill was, that Armour might be decreed to re-convey to the complainant a half interest in the land, that a lien might be declared on the other half for the unpaid balance of the purchase-money due from Armour; that the partnership accounts might be settled, and for other and further relief.

The defendant answered the bill, and denied all its material allegations. He alleged, that the land was bought by him and the complainant jointly, in 1844, under an agreement that they should jointly cultivate it and raise vegetables for market; that it was further agreed between them that the title should be taken in the name of the complainant alone, but the expenses of cultivation and the profits were to be equally divided between them; that he paid about $1200 of the purchase-money, entered into the possession of the land, and spent about $1000 in improvements on it; that their experiment in gardening proved a failure, and the profits did not pay the expenses; that the complainant's family in the meantime boarded with him, and the complainant became otherwise indebted to him; that in December, 1846, in consideration of this indebtedness, the complainant agreed to convey to him his interest in the land; that the deed was intentionally made to convey the entire interest, and the complainant knew when he executed it that it did convey the entire interest; that the defendant henceforward cultivated the

land solely on his own account, and that the complainant had no interest in it or the proceeds of the garden.

The complainant took the depositions of Charles Armour and John Pollard, both of whom testified to declarations of the defendant, made while he was occupying and cultivating the land, to the effect that he and the complainant were jointly interested, and that the complainant contributed liberally to the payment of the expenses; and the former further testified, that the complainant bought the land, paid the greater part of the purchase-money, and afterwards sold an interest to the defendant at its cost price, and that he never heard the defendant deny the complainant's interest until after the return of the latter from California. The defendant took the depositions of T. H. Oliver and William McKean. Oliver testified, that the complainant, a short time before he went to California, told him that he had sold his interest in the land to the defendant; but, on his return from California, still claimed an interest in the land, and said that the defendant had "tricked" him out of the title. McKean testified, that in April, 1851, he, as auctioneer, advertised the land for sale at the request of the complainant; that it was advertised as belonging to the defendant, and he understood that it was the defendant's property; that the complainant was anxious to accept an offer of $2,500 for the land, but said that the title must come from Armour; and that Armour refused to sell for that price.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant; directing the defendant to execute to the complainant, within ten days, a conveyance of an undivided half interest in the land, and ordering a reference to the master of the matters of account; and his decree is now assigned as error.

John Hall, for the appellant.

Percy Walker, contra.

STONE, J.—Neither the bill in this case, nor the answer, sets up that the deed from Lose and wife to

Armour, conveying the.entire lot, was in trust. The bill alleges, that Armour, by mistake or fraud, procured the deed for the entire property, when it was the intention of Lose to convey only the undivided half. The answer denies this, and sets up a contract, by which Lose intended to convey, and did convey, the entire property in absolute right.

Under these circumstances, we consider the only question to be one of fact. Two witnesses and strong corroborating circumstances prove satisfactorily to our minds that Mr. Lose, the complainant, had a continuing interest in the lands in' controversy. The declarations of Mr. Armour, and the conduct of the parties, leave but little if any room to doubt the nature of that interest. It was an interest in the freehold. The countervailing testimony is not sufficient to overturn this conclusion. We feel authorized, then, to find that, either by fraud or mistake, and without the knowledge or consent of Lose, Armour procured the deed for the entire property, when it should have been only for an undivided half. This leads us to the same conclusions which the chancellor attained.

The decree of the chancellor is affirmed.